# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| RONALD J. PANNOZZI, PAOLA BALDOMAR, MEREDITH BRANDT, MONICA DEPINA, MEGHAN KONOPKA, JOAN RATCLIFFE, and RENEE TRIGUEIRO, individually and on behalf of all others similarly situated,<br><br>     Plaintiffs,<br><br> v.<br><br>DELOITTE CONSULTING LLP,<br><br>     Defendant. | **CASE NO. 1:24-cv-00524-MRD-LDA** |

## PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND APPLICATION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS

Pursuant to Federal Rule of Civil Procedure 23, Plaintiffs[1] respectfully submit this Motion for Final Approval and Application for Attorneys' Fees, Costs, and Service Awards, supported by a Joint Declaration of Class Counsel ("Joint Decl."), attached as ***Exhibit B***, and the Declaration of the Settlement Administrator ("Admin. Decl."), attached as ***Exhibit C***. The Court should enter the Final Approval Order: (1) granting Final Approval of the Settlement; (2) affirming certification of the Settlement Class for settlement purposes, pursuant to Rule 23(a) and (b)(3); (3) confirming Plaintiffs' appointment as Class Representatives; (4) confirming the appointments of Jeff Ostrow of Kopelowitz Ostrow P.A and Danielle L. Perry of Mason LLP as Class Counsel, pursuant to Rule 23(g)(1); (5) confirming the appointment of Kroll Settlement Administration LLC as

---

[1] All capitalized terms used herein shall have the same meanings as those defined in the Settlement Agreement, attached as ***Exhibit A***.

Settlement Administrator; (6) awarding Class Counsel attorneys' fees and costs; (7) awarding each Class Representative a Service Award; (8) overruling timely objections, if any; and (9) entering final judgment dismissing the Action with prejudice and reserving jurisdiction over Settlement implementation.

## I.    INTRODUCTION

On October 23, 2025, the Court preliminarily approved the Settlement. ECF No. 33. The Settlement provides substantial Settlement Class Member Benefits for over 700,000 individuals via a non-reversionary, all-cash Settlement Fund of $6,300,000.00, from which Settlement Class Members with Valid Claims may elect to receive: (a) up to $5,000.00 for documented losses; or (b) an alternate cash payment in the estimated amount of $100.00 (subject to a *pro rata* increase or decrease based on the number of Valid Claims); and (c) two years of Medical Data Monitoring including $1,000,000 in identity theft insurance. The Settlement Fund will also be used to pay all Settlement Administration Costs, any Court-awarded attorneys' fees and costs to Class Counsel, and any Court-awarded Service Awards to the Class Representatives.

Plaintiffs now move the Court for Final Approval and apply for an award of attorneys' fees and costs to Class Counsel and Service Awards to the Class Representatives. The Settlement satisfies all Final Approval criteria. Currently, there are no objections to the Settlement and no opt-outs from the Settlement Class. Admin. Decl. ¶ 16. This overwhelmingly positive response affirms the Court's initial conclusion, outlined in the Preliminary Approval Order, that the Settlement is fair, reasonable, and adequate. Class Counsel fully evaluated the strengths, weaknesses, and equities of the Parties' respective positions, and believe the Settlement fairly resolves their differences. Consequently, the Court should grant Final Approval of the Settlement and the Application for Attorneys' Fees, Costs, and Service Awards.

## II.    BACKGROUND AND PROCEDURAL HISTORY

Deloitte is a consulting firm that provides services to a wide range of clients, including governmental agenciesand private companies. *See* Joint Decl. ¶ 3. Rhode Island, a client of Defendant, is a governmental entity that provides state benefits including Medicaid, SNAP, TANF, childcare assistance, health insurance coverage, and other benefit programs to Rhode Island residents through a system called RIBridges. *Id.* On December 5, 2024, the State of Rhode Island was informed by Defendant that cybercriminals may have unlawfully accessed and acquired information stored on RIBridges' computer systems. *Id.* ¶ 4. The information that may have been exposed included names, addresses, dates of birth, Social Security numbers, banking information, telephone number, and health information.. *Id*.

This Action was initiated as a result of the Data Incident. *Id*. ¶ 6. Thereafter, eight additional similar actions were filed seeking to represent overlapping classes of individuals. *Id*. After meeting and conferring, Plaintiffs decided to work cooperatively and pursue their claims collectively in a single action. *Id.* ¶ 7. They then moved to consolidate those cases into this Action and moved to appoint Interim Co-Lead Class Counsel consisting of Jeff Ostrow of Kopelowitz Ostrow P.A. and Danielle Perry of Mason LLP, which the Court granted. *Id.*

In preparation of filing their Consolidated Class Action Complaint, Plaintiffs consulted with experts to understand how the breach occurred, the type of information involved, and whether the information was published on the dark web. *Id.* ¶ 8. On March 28, 2025, they filed the Complaint, asserting claims for negligence, negligence *per se*, breach of implied contract, breach of third-party beneficiary contract, unjust enrichment, violations of Rhode Island's consumer protection laws, injunctive relief, and declaratory judgment. *Id.* ¶ 9. Defendant moved to dismiss on May 27, 2025. *Id.* ¶ 10.

In an effort to conserve resources for all concerned, the Parties then decided to focus their resources on exploring early resolution. *Id.* ¶ 11. On June 10, 2025, the Parties filed a Joint Motion to Stay the case pending the outcome of mediation scheduled with the Honorable Wayne Andersen (Ret.), an experienced class action mediator. *Id*. ¶¶ 11-12. The Court granted the motion on June 23, 2025. *Id.* ¶ 12.

In advance of the mediation, Plaintiffs propounded informal discovery requests on Defendant to learn as much as possible about liability and damages. *Id.* ¶ 13. In response, Defendant provided pertinent information to facilitate meaningful negotiations. *Id*. The Parties also exchanged mediation briefs outlining their positions with respect to liability, damages, and settlement-related issues. *Id*.

The Parties mediated for a full day on August 19, 2025, and agreed to the material terms of the Settlement disposing of all claims against Defendant. *Id.* ¶ 14. Over the next several weeks, the Parties interviewed prospective Settlement Administrators and diligently drafted, negotiated, and finalized the Agreement, the Notice Program, Notices, Claim Process, Claim Form, Preliminary Approval Order, and the Final Approval Order. Plaintiffs filed their unopposed Motion for Preliminary Approval on October 16, 2025. *Id*. The Court granted Preliminary Approval of the Settlement on October 23, 2025. ECF No. 33.

## III.    SUMMARY OF THE SETTLEMENT AND BENEFITS

### A.  Settlement Class

The Settlement Class is defined as follows:

All living individuals residing in the United States who were sent a notice of the Data Incident.

Agreement ¶ 64. The Settlement Class excludes (1) all persons who are directors, officers, and

agents of Defendant, or their respective subsidiaries and affiliated companies; (2) governmental entities; (3) the Judge assigned to the Action, that Judge's immediate family, and Court staff; and (4) all Settlement Class Members that timely opt-out of the Settlement. *Id.*

**B. Settlement Consideration**

The non-reversionary all-cash $6,300,000.00 Settlement Fund will be used to pay: (1) Cash Payments and Medical Data Monitoring; (2) all Settlement Administration Costs; (3) any Court-approved Service Awards to Class Representatives; and (4) any Court-approved attorneys' fees and costs to Class Counsel. *Id.* ¶ 72. Following Preliminary Approval and pursuant to the Settlement, the Defendant funded the Settlement Fund with $500,000.00 to pay for the Settlement Administration Costs incurred before the Effective Date. Joint Decl. *Id.* ¶ 15. The remainder of the Settlement Fund will be funded following the Effective Date. *Id.*

1. ***Cash Payments*** – Settlement Class Members may elect either Cash Payment A – Documented Losses or Cash Payment B – Alternate Cash:

    a. **Cash Payment A – Documented Losses.** Cash Payment A is a Cash Payment of up to $5,000.00 per Settlement Class Member upon presentment of documented losses related to the Data Incident. *Id.* ¶ 73.a. To receive a documented loss payment, a Settlement Class Member must elect Cash Payment A on the Claim Form attesting under penalty of perjury to incurring documented losses. *Id.* Settlement Class Members will be required to submit reasonable documentation supporting the losses. *Id.* Settlement Class Members shall not be reimbursed for expenses if they have been reimbursed for the same expenses by another source, including compensation provided in connection with the credit monitoring and identity theft protection product offered as part of the notification letter provided by Defendant or otherwise. *Id.* If a Settlement Class Member does not submit reasonable documentation supporting a loss, or if their

Claim is rejected by the Settlement Administrator for any reason, and the Settlement Class Member fails to cure his or her Claim, the Claim will be rejected and the Settlement Class Member's Claim will be as if they elected Cash Payment B. *Id*.

   **b.** **Cash Payment B – Alternate Cash.** As an alternative to Cash Payment A, a Settlement Class Member may elect Cash Payment B, which is a cash payment in the estimated amount of $100.00. *Id*. ¶ 73.a.

   **2.** ***Medical Data Monitoring*** – In addition to electing Cash Payment A or Cash Payment B, all Settlement Class Members may also make a Claim for Medical Data Monitoring that will include two years of CyEx's medical data monitoring product that will include: (i) real time monitoring of the credit file with one credit bureau; (ii) dark web scanning with immediate notification of potential unauthorized use; (iii) security freezing assistance; (iv) victim assistance; (v) $1,000,000.00 in identity theft insurance with no deductible; and (vi) access to fraud resolution agents to help investigate and resolve instances of identity theft. *Id*. ¶ 76.d.

   **3.** **Pro Rata *Adjustments on Cash Payments*** – All Cash Payments will be subject to a *pro rata* increase from the Settlement Fund if the value of all Valid Claims is insufficient to exhaust the entire Settlement Fund. *Id*. ¶ 75. If the amount of Valid Claims exhausts the Settlement Fund, Cash Payments may be reduced *pro rata* accordingly. *Id*. To calculate the *pro rata* increase or decrease, the Settlement Administrator must distribute the funds in the Net Settlement Fund first for payment of Medical Data Monitoring, then for Cash Payment A – Documented Losses, and then to all those who elect Cash Payment B – Alternate Cash. *Id*. Any *pro rata* adjustment will be on an equal percentage basis. *Id*.

   **4.** ***Service Awards, Attorneys' Fees, and Costs*** – The Agreement calls for reasonable Service Awards for the Class Representatives of up to $2,500.00 each. *Id*. ¶ 107. The awards are

meant to compensate Class Representatives for their efforts in this Action, including serving as named Plaintiffs, assisting in Class Counsel's investigation and answering questions, maintaining contact with Class Counsel, reviewing case documents, and being prepared to assist with discovery. Joint Decl. ¶¶ 35-36. As explained in the Agreement and the Notices to the Settlement Class, Class Counsel also seek an attorneys' fees award not to exceed one-third of the Settlement Fund ($2,100,000.00), plus reimbursement of litigation costs. Agreement ¶ 106; Joint Decl. ¶ 38. Class Counsel negotiated attorneys' fees, costs, and Service Awards as part of the total Settlement Class Member Benefits only after agreeing to the Settlement's material terms. *Id.* To date, not a single Settlement Class Member has objected to the amounts sought. Admin Decl. ¶ 16.

5.    ***Funds Remaining After Distribution*** – The Settlement will exhaust the Settlement Fund. Agreement ¶ 75. However, if funds remain from uncashed checks 240 days following the date Settlement Class Members are first able to select their form of payment, any residual shall be distributed to the Electronic Privacy Information Center, to be approved by the Court. *Id*. ¶ 109.

6.    ***Releases*** – The Releasing Parties will release the Released Parties for claims relating to the Data Incident. Agreement ¶ 110. The Releases are narrowly tailored to the Action's claims. Joint Decl. ¶ 18.

## IV.    NOTICE PROGRAM, CLAIMS PROCESS, OPT-OUTS AND OBJECTIONS

### A.  The Notice Program Satisfied Rule 23 and Due Process.

The Settlement Administrator implemented the Notice Program in full compliance with the Settlement Agreement and the Preliminary Approval Order. Admin. Decl. ¶¶ 4-15. Commencing on November 24, 2025, Postcard Notices were sent to 729,946 Settlement Class Members, which includes all those for whom Defendant provided a mailing address or for whom the Settlement Administrator could determine an updated address. *Id*. ¶¶ 4, 8, Ex. A. Postcard Notices returned

as undeliverable were re-mailed to new addresses found using a reasonable address trace service. *Id*. ¶¶ 9-10. As of December 11, 2025, the Settlement Administrator expects the Notice Program would have reached approximately 98.53% of Settlement Class Members (719,415), far exceeding the Federal Judicial Center's standard of 70–95%, and consistent with other court-approved, best-practicable notice programs. *Id*. ¶ 17; *see* FEDERAL JUDICIAL CENTER, "Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide" (2010) (recognizing the effectiveness of notice that reaches between 70 and 95 percent of the class).

The Postcard Notice clearly and concisely summarizes the Settlement and the Settlement Class' legal rights and it directs Settlement Class members to the Settlement Website for additional information, including the Long Form Notice, Settlement Agreement, and details on the Claim Process. Admin Decl., Ex. A. The Long Form Notice, which details the procedures to opt-out or object to the Settlement or to make a Claim, is also available on the Settlement Website and by mail upon a Settlement Class member's request. *Id.*, Ex. B.

The Settlement Website, www.RIBridgesDataSettlement.com, which went live on November 21, 2025, contains a summary of the Settlement, includes important documents and relevant dates and information, and serves as a portal for Settlement Class Members to file Claim Forms. *Id.* ¶ 5. As of October 3, 2025, there have been 161,000 unique visitor visits to the Settlement Website. *Id*. Additionally, on November 5, 2025, the Settlement Administrator established a toll-free telephone line (833-630-5401) for Settlement Class members to call with Settlement-related inquiries. *Id*. ¶ 6. As of December 9, 2025, there have been 399 calls to the toll-free line, and 256 callers have been connected to live operators. *Id.*

To satisfy the requirements of due process, "[t]he court must direct notice in a reasonable manner to all members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1); *Reppert v.*

*Marvin Lumber & Cedar Co.*, 359 F.3d 53, 56 (1st Cir. 2004)). "The notice program need not be perfect, but it must provide the 'best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort.'" *Medoff v. CVS Caremark Corp.*, No. 09-cv-554-JNL, 2016 U.S. Dist. LEXIS 19135, at *23 (D.R.I. Feb. 17, 2016) (quoting Fed. R. Civ. P. 23(c)(2)(B)).

Here, the Notices adequately inform the Settlement Class of the nature of the Action, the Settlement Class definition, the claims at issue, the binding effect of Final Approval and class judgment, and the Settlement Class members' rights to object, opt-out, and/or enter an appearance through an attorney. Admin Decl., Exs. A-C. The forms of Notice utilized clear and concise language that is easy to understand. Moreover, the Settlement Administrator—with the Parties' assistance—is taking all necessary measures to ensure Notice reaches as many Settlement Class members as possible. Thus, the Notice provided has been consistent with the Notice Program the Court approved in its Preliminary Approval Order, satisfies due process considerations of the United States Constitution, and weighs in favor of Final Approval. *Id.* ¶ 17; Joint Decl. ¶ 28.

**B. Claims, Opt-Outs, and Objections**

The Claim Process was structured to give all Settlement Class members adequate time to review the Settlement terms, submit Claims, and decide whether to opt-out of or object to the Settlement. Joint Decl. ¶ 29. The Opt-Out and Objection Deadlines are December 30, 2025, and the Claim Form Deadline is January 14, 2026. Admin Decl. ¶¶ 12, 15. As of December 8, 2025, the Settlement Administrator has received 15,522 Claim Forms, zero opt-out requests, and zero

objections.[2] *Id.* ¶¶ 13, 16. Class Counsel are pleased with the current Settlement class participation rate. Joint Decl. ¶ 32. With a month left before the Claim Form Deadline, Class Counsel anticipate the number of Claims will continue to increase. *Id.* Class Counsel will update the Court with the final Notice Program and Claim Process results at the Final Approval Hearing, including responding to any objections, if filed.

## V.    SETTLEMENT CLASS CERTIFICATION

For settlement purposes only, the Court's Preliminary Approval Order preliminarily certified the Action as a class action for the Settlement Class, finding prerequisites of ascertainability, numerosity, commonality, typicality, adequacy, predominance, and superiority were satisfied pursuant to Rule 23(a) and (b)(3), and that the Settlement Class should be certified. ECF No. 37, at 2-3. The Court appointed Plaintiffs as Class Representatives pursuant to Rule 23(e)(2)(A), and Jeff Ostrow of Kopelowitz Ostrow P.A. and Danielle L. Perry of Mason LLP as Class Counsel pursuant to Rule 23(g)(1). The Court also appointed Kroll as the Settlement Administrator and approved the Notice Program and Claim Process. Because nothing has changed regarding class certification, the Court should finally certify the Settlement Class. For efficiency, Plaintiffs incorporate by reference their Settlement Class certification arguments from the Motion for Preliminary Approval. ECF No. 32, at 11-14.

## VI.    THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE.

### A.  Rule 23(e)(2)'s Factors Weigh in Favor of Final Approval

As a matter of public policy, settlement is a highly favored means of resolving disputes—

---

[2] One Settlement Class member submitted a letter to the Parties dated December 9, 2025, but the letter did not address the substance of the Settlement, nor did it state it was an objection or request for exclusion. As it does not meet the Court's requirements for opting-out or objecting, the Parties are not considering the correspondence as a valid opt-out or an objection.

particularly in complex cases where substantial judicial resources can be conserved by avoiding litigation. *See U.S. v. Comunidades Unidas Contra La Contaminacion*, 204 F.3d 275, 280 (1st Cir. 2000); *see also Hotel Holiday Inn de Isla Verde v. N.L.R.B.*, 723 F.2d 169, 173 (1st Cir. 1983) (quoting *Pearson v. Ecological Sci. Corp.*, 522 F.2d 171 (5th Cir.1975)) (Settlement agreements "will be upheld wherever possible because they are a means of amicably resolving doubts and preventing lawsuits."); *Jean-Pierre v. J&L Cable TV Servs.*, 538 F. Supp. 3d 208, 212 (D. Mass. 2021) (quoting *In re Lupron Mktg. and Sales Practices Litig.*, 228 F.R.D. 75, 88 (D. Mass 2005)) ("[T]he law favors class action settlements[.]"); *Lazar v. Pierce*, 757 F. 2d 435, 440 (1st Cir. 1985) ("[W]e should point to the overriding public interest in favor of the voluntary settlement of disputes, particularly where class actions are involved[.]").

Class action settlements must be approved by the Court pursuant to Federal Rule of Civil Procedure 23(e). Rule 23(e)(2) sets forth the following final approval factors the court must consider when determining if the class action settlement is "fair, reasonable, and adequate":

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

*Jean-Pierre,* 538 F. Supp. 3d at 212-13. Considering these factors, the Settlement terms warrant Final Approval. Indeed, the proposed Settlement is squarely within the range of reasonableness and meets the criteria that is identified in Rule 23(e). "In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation

with uncertain results." 4 A Conte & H. Newberg, *Newberg on Class Actions*, § 11:50 at 155 (4th ed. 2002).

"First and foremost, '[i]f the parties negotiated at arm's length and conducted sufficient discovery, [this court] must presume the settlement is reasonable.'" *Medoff*, 2016 U.S. Dist. LEXIS 19135, at *6 (quoting *Howe v. Townsend (In re Pharm. Indus. Average Wholesale Price Litig.)*, 588 F.3d 24, 32-33 (1st Cir. 2009)). Here, after the Parties exchanged information sufficient to assess the strengths and weaknesses of their positions, the Settlement was negotiated at arm's-length with the assistance of a well-respected and experienced mediator. Joint Decl. ¶¶ 20, 33. The Settlement is the product of a full day of mediation with the Honorable Wayne Anderson (Ret.). *Id.* ¶ 11. While the Parties were respectful and professional throughout the negotiations, the Settlement was indisputably the result of an adversarial, arm's-length negotiation.

The Settlement relief is substantial and easily satisfies the adequacy requirement. Settlement Class Members benefit directly from the Settlement in many ways, including cash compensation and two years of Medical Data Monitoring. Agreement ¶ 73. The Settlement's value is guaranteed, whereas the chances of prevailing on the merits are uncertain. Joint Decl. ¶ 12.

Plaintiffs faced significant risks and costs should they have continued to litigate. Data breach cases are inherently complex, with novel issues and rapidly evolving laws posing substantial hurdles even at the pleading stage. *See, e.g.*, *Hashemi v. Bosley, Inc.*, No. 21-cv-946, 2022 U.S. Dist. LEXIS 210946, at *9 (C.D. Cal. Nov. 21, 2022) (explaining that data breach class actions are a relatively new type of litigation and that damages methodologies in data breach cases are largely untested and have yet to be presented to a jury); *Gordon v. Chipotle Mexican Grill, Inc.*, No. 17-cv-01415- CMA-SKC, 2019 U.S. Dist. LEXIS 215430, at *3 (D. Colo. Dec. 16, 2019) (Data breach cases . . . are particularly risky, expensive and complex" due at least in part to the

cutting-edge, innovative nature of data breach litigation and the rapidly evolving law; *see also In re Equifax Inc. Customer Data Sec. Breach Litig*., No. 17-MD-2800, 2020 U.S. Dist. LEXIS 118209, at *240 (N.D. Ga. Mar. 17, 2020), *aff'd in relevant part* 999 F.3d 1247 (11th Cir. 2021), *cert. denied sub nom.* (in data breach "[t]he law . . . remains uncertain and the applicable legal principles have continued to evolve"). For these reasons, data breach cases like this one generally face substantial class certification hurdles. *See, e.g.*, *In re Blackbaud, Inc., Customer Data Breach Litig*., No. 3:20-MN-02972-JFA, 2024 U.S. Dist. LEXIS 86740, at *93 (D.S.C. May 14, 2024) (denying class certification after concluding proposed class and sub-classes were not ascertainable); *In Re: Blackbaud, Inc., Customer Data Breach Litig.*, No. 3:20-MN-02972-JFA, 2024 U.S. Dist. LEXIS 234064 , at *47 (D.S.C. Dec. 30, 2024) (denying motion for leave to file a renewed motion for class certification); *In re TJX Cos. Retail Sec. Breach Litig*., 246 F.R.D. 389 (D. Mass. 2007) (denying class certification). Maintaining class certification is often an equally challenging hurdle. *See e.g*., *Marriott Int'l Inc. Customer Data Sec. Breach Litig.*, 78 F.4th 677 (4th Cir. Aug. 18, 2023) (decertifying classes). Further, if litigation continues, Defendant would vigorously defend, and the litigation could potentially span for years. Joint Decl. ¶ 23. Thus, Plaintiffs' likelihood of success at trial is far from certain, and the recovery here is more than adequate under the circumstances. *Id.* ¶ 24.

Plaintiffs would also need to prevail on a class-wide basis after a motion to dismiss, motion for summary judgment, and/or *Daubert* motions on damages methodologies, among other motions. *Id.* ¶ 23. Though many courts have denied motions to dismiss, the path to a class-wide monetary judgment remains unpaved, particularly in the area of damages. *See, e.g., S. Indep. Bank v. Fred's, Inc*., No. 2:15- CV-799-WKW, 2019 U.S. Dist. LEXIS 40036, at *3-4 (M.D. Ala. Mar. 13, 2019) (ruling under *Daubert* that causation not satisfied for class certification in data breach action).

Indeed, the damages methodologies, while theoretically sound in Plaintiffs' view, remain largely untested in disputed class certification settings and unproven in front of a jury. Joint Decl. ¶ 23.

Time was also not on the Settlement Class Members' side. While the Parties would be litigating the foregoing issues, potentially for years to come, Settlement Class Members would not receive Settlement Class Member Benefits, including the protection of Medical Data Monitoring offered by the Settlement. Joint Decl. ¶ 24. Thus, a reasonable settlement is more practical than facing the risks of no recovery at all after years of litigation.

In contrast to the risk, cost, and delay posed by proceeding to trial, if it is approved, the Settlement will provide certain, substantial, and immediate relief to the Settlement Class. *Id.* ¶ 25. It ensures Settlement Class Members with Valid Claims will receive guaranteed Cash Payments and/or valuable and useful Medical Data Monitoring that may not have been available at trial. *Id.* Based on the foregoing, it is Class Counsel's well-informed opinion that, given the uncertainty and further substantial risk and expense of pursuing the Action through contested class certification proceedings, trial and appeal, the proposed Settlement is fair, reasonable, and adequate, and in the best interests of the Settlement Class. *Id.* ¶ 34.

The Agreement treats Settlement Class Members equitably. The Settlement Class Members are all able to select from the two above-described options to obtain the benefit best tailored to their individual circumstances and they are all eligible to elect the same Medical Data Monitoring benefit as well.

Plaintiffs and Class Counsel have successfully represented the Settlement Class, completed a successful arm's length negotiation that secured adequate relief, and Settlement Class Members are treated equitably under the Settlement. The Court should therefore approve this Settlement.

## B. The *Grinnell* Factors, or a Similar Analysis, Also Weigh in Favor of Final Approval

Courts in the First Circuit also consider the following "*Grinnell*" factors for final approval:

> (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through trial; (7) the ability of defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Del Sesto v. Prospect CharterCARE, LLC*, C.A. No. 18-328 WES, 2019 U.S. Dist. LEXIS 175173, at *10-11 (D.R.I. Oct. 9, 2019) (Smith, J.) (quoting *City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 463 (2d Cir. 1974)); *see also Baptista v. Mut. of Omaha Ins. Co.*, 859 F. Supp. 2d 236, 240-41 (D.R.I. 2012) (Lisi, J.) (same); *In re Loestrin 24 Fe Antitrust Litig.*, Master File No. 1:13-md-2472-S-PAS, 2020 U.S. Dist. LEXIS 161552, at *31-32 (D.R.I. Sept. 1, 2020) (same); *see also In re Colgate-Palmolive Softsoap Antibacterial Hand Soap Mktg. & Sales Practices Litig.*, No. 12-MD-2320-PB, 2015 U.S. Dist. LEXIS 154602, at *29 (D.N.H. Nov. 16, 2015) ("Courts in this circuit, however, have often relied on the Second Circuit's *Grinnell* factors, or some variation on those factors.").

Courts, however, have broad discretion to apply fewer factors where appropriate. *Del Sesto*, 2019 U.S. Dist. LEXIS 175173, at *11 ("[A]lthough "[t]he case law offers 'laundry lists of factors' pertaining to reasonableness . . . 'the ultimate decision by the judge involves balancing the advantages and disadvantages of the proposed settlement as against the consequences of going to trial or other possible but perhaps unattainable variations on the proffered settlement.'"). For example, the court in *Colgate-Palmolive Softsoap* noted, "Although I have discretion to apply *Grinnell* verbatim, I employ a more concise list":

> As such, I address the following considerations in turn: (1) comparison of the proposed settlement with the likely result of continued litigation; (2) risk, complexity, expense and duration of the case; (3) reaction of the class to the settlement; (4) stage of the litigation and the amount of discovery completed; and (5) quality of counsel and conduct during litigation and settlement negotiations.

2015 U.S. Dist. LEXIS 154602, at *29. These factors are considered below.

### 1.  *The Comparison of the Proposed Settlement with the Likely Result of Litigation*

This factor is difficult in that there is little to no empirical evidence to determine how a jury would react to the claims at issue. No data breach class action has ever one to trial. Moreover, as discussed *supra*, the rapidly evolving world of data breach litigation demonstrates that there is substantial risk that this matter would ever get to trial.

"While it is possible to hypothesize about larger amounts that might have been recovered. . . '[t]he evaluating court must . . . guard against demanding too large a settlement based on its view of the merits of the litigation; after all, settlement is a compromise, a yielding of the highest hopes in exchange for certainty and resolution.'" *In re Lupron Mktg. & Sales Practices Litig.*, 228 F.R.D. 75, 97-98 (D. Mass 2005) (quoting *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 806 (3d Cir. 1995)); *Bezdek v. Vibram USA Inc.*, 79 F. Supp. 3d 324, 349 (D. Mass. 2015), *aff'd,* 809 F.3d 78 (1st Cir. 2015) (echoing the maxim that settlements are compromises and noting that "[t]he class members' . . . worst-case scenario, and a plausible one, is that they would receive no damages award at all").

Here, despite the serious risks of continued litigation, which also factors into the sixth element, including the risk of no recovery at all, the Settlement offers substantial and concrete relief to the Settlement Class. The Settlement Class Members can choose from either reimbursement for documented losses of up to $5,000.00 or a *pro rata* cash payment—in addition to two years of valuable Medical Data Monitoring. *Cf. Bezdek*, 79 F. Supp. 3d at 346 (determining,

after noting the obstacles facing the class members if they were to continue litigating the case that "[t]he relatively modest settlement payout that has crystallized following notice is a preferable outcome for class members").

### 2. *Reaction of the Class to the Settlement*

The Settlement has received a positive reception from the Settlement Class. The 15,522 Claim Forms submitted thus far represent a roughly 2% claims rate. Admin Decl. ¶ 13. This already exceeds the claims rates seen in many data breach class actions. *See, e.g.*, *In re Wawa, Inc. Data Sec. Litig.*, No. 19-6019, 2024 U.S. Dist. LEXIS 65200, at *71 (E.D. Pa. Apr. 9, 2024) (2.56% claims rate "actually compares favorably to the claims rates in other data breach class actions"); *Carter*, 2023 U.S. Dist. LEXIS 210744 at *15 (1.6% claims rate "is in line with claims rates in other data breach class action settlements" and collecting cases with claims rates between 0.83% and "about two percent")*; In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 321 (N.D. Cal. 2018) (1.8% claims rate reflects a positive reaction by the class). As such, the claims rate, which is expected to increase, should be seen as a favorable sign that the Settlement Class approves of this Settlement.

Likewise, "the lack of any serious objection to the settlement agreement from members of the class weighs in favor of approving the settlement." *Medoff*, 2016 U.S. Dist. LEXIS 19135, at *6; *see Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 118 (2d Cir. 2005) ("If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement."). Here, out of over 700,000 Settlement Class Members, not a single one has objected to the Settlement so far, and not one has requested to opt-out. Admin. Decl. ¶ 16. This reaffirms the Court's preliminary conclusion that the Settlement is fair, reasonable, and adequate.

### 3. *Stage of the Litigation and the Amount of Discovery Completed*

Like the third *Grinnell* factor, this element involves "the parties' knowledge of the strengths and weaknesses of the various claims in the case[.]" Indeed, "the Court need not find that the parties have engaged in extensive formal discovery to approve the settlement. Rather, [t]he Court must find that counsel had sufficient information to act intelligently on behalf of the class." *Padro v. Astrue*, 11-CV-1788 CBA RLM, 2013 U.S. Dist. LEXIS 150494, at *15-16 (E.D.N.Y. Oct. 18, 2013) (internal citations and quotation omitted). The Parties exchanged sufficient informal discovery to understand the strengths and weaknesses of their respective claims and defenses. Joint Decl. ¶¶ 13, 33. The Court can thus "find that the parties had a sufficient understanding of the merits of the case in order to engage in informed negotiations, particularly where plaintiffs' counsel are skilled and experienced in consumer class action litigation, including [cases of this type]." *Bezdek*, 79 F. Supp. 3d at 348.

### 4. *Quality of Counsel*

"Finally, in evaluating whether the settlement is fair, reasonable, and adequate, the Court also gives due weight to the judgment of class counsel." *In re Equifax Inc. Customer Data Sec. Breach Litig.*, 2020 U.S. Dist. LEXIS 118209, at *176. As this Court found at Preliminary Approval, "the Parties' Counsel are all attorneys familiar with class action litigation; particularly experienced in the litigation, certification, trial, and settlement of class actions, including data breach cases; and knowledgeable of the legal and factual issues at the center of this Action." ECF No. 70 at 12-13. Defendant is represented by experienced counsel who are highly competent adversaries from well-respected law firms. *See Walco Invs. v. Thenen*, 975 F. Supp. 1468, 1472 (S.D. Fla. 1997) ("Given the quality of defense counsel from prominent national law firms, the Court is not confident that attorneys of lesser aptitude could have achieved similar results."). This

factor favors Final Approval.

### 5. *Conduct of the Negotiations*

The Parties mediated on August 19, 2025. As discussed above, there is no question this was an arm's length negotiation with an experienced mediator and that the process was fundamentally fair. There is no hint of collusion or bad faith. Plaintiffs reviewed the terms of the Settlement and authorized the signing of the Agreement, endorsing the negotiations of their counsel. *See also Baptista*, 859 F. Supp. 2d at 241 ("[T]he Court concludes that this is a good settlement which was achieved at an arm's length negotiation with the services of a mediator."). This factor favors Final Approval.

### 6. *Prospects of the Case, Including Risk, Complexity, Expense and Duration*

As discussed above with respect to the Rule 23(e)(2) factors, there is substantial risk and complexity in a consumer data breach action, and success for Plaintiffs is far from assured. In finding a similar factor favored approval in a data breach context, a court noted the following:

> The risks of litigation for both parties and the costs of proceeding to trial support a finding that the settlement is reasonable. As the plaintiffs point out, lengthy discovery, including the deposing of expert witnesses on damages, motions for summary judgment, and a motion for class certification would occur before final resolution could take place. The calculation of damages at trial is uncertain given that law in this area is developing.

*In re Novant Health, Inc.*, 1:22-CV-697, 2024 U.S. Dist. LEXIS 107949, at *20 (M.D.N.C. June 17, 2024). Given the uncertainty in data breach litigation, a real likelihood of an appeal from the party that does not prevail could extend the time and expense for resolution beyond that which makes economic sense for the Plaintiffs and the Settlement Class. Joint Decl. ¶ 23. This factor favors Final Approval.

* * *

Because the Rule 23(e)(2) factors and the other factors courts in this District and Circuit follow are satisfied, Final Approval of the Settlement should be granted.

## VII.    APPLICATION FOR ATTORNEYS' FEES, COSTS AND SERVICE AWARDS

### A.  Legal Standard for Attorneys' Fees

Federal Rule of Civil Procedure 23(h) provides: "[i]n a certified class action, the court may award reasonable attorneys' fees and nontaxable costs that are authorized by law or by the parties' agreement." Under the common fund doctrine, "attorneys whose efforts lead to the creation of a fund for the benefit of the class are 'entitled to a reasonable attorney's fee from the fund as a whole.'" *In re Neurontin Mktg. & Sales Pracs. Litig*., 58 F. Supp. 3d 167, 170 (D. Mass. 2014) (quoting *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980)); *Bezdek*, 79 F. Supp. 3d at 349 ("Attorneys in a certified class action may be awarded reasonable fees and costs."). When awarding attorneys' fees, the First Circuit allows computing attorneys' fees in common fund cases as a percentage of the fund, "subject, of course, to considerations of reasonableness," or by fashioning a lodestar. *In re Thirteen Appeals Arising out of the San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 305 (1st Cir. 1995). However, the First Circuit in *Thirteen Appeals* emphasized that the "percentage of the fund" approach has many advantages in complex cases like this one, and is the traditional approach. *Id.* at 305-07. Specifically, the First Circuit noted the percentage of the fund approach is easy to administer, reduces the possibilities of collateral disputes, enhances judicial efficiency, is less taxing on judicial resources, and "better approximates the workings of the marketplace." *Id.* at 307; *see also Carlson v. Target Enter*., 447 F. Supp. 3d 1, 3 (D. Mass Mar. 23, 2020) ("In the First Circuit, the percentage of fund methodology . . . is favored and appropriate in common fund cases."); *accord In re Loestrin*, 2020 U.S. Dist. LEXIS 161552, at *31-32 (using the percentage of the fund method). There is no requirement to apply a lodestar analysis in a class

action settlement. *See Trombley v. Bank of Am. Corp.*, No. 08-cv-456-JD, 2013 U.S. Dist. LEXIS 130550, at *22-23 (D.R.I. Sept. 12, 2013) (citing *Thirteen Appeals*). Therefore, Class Counsel request that the Court use the percentage of the fund method.

### B. The Requested Attorneys' Fees Award Is Fair and Reasonable.

Plaintiffs here seek Court approval of Class Counsel attorneys' fees of one-third of the cash $6,300,000.00 Settlement Fund ($2,100,000.00). Joint Decl. ¶ 38. This request is within the range of attorneys' fee requests that have been approved in this District and within the First Circuit, including in similar data privacy class actions. *See Kondash v. Citizens Bank*, Case No. 18-cv-00288-WES-LDA, 2020 U.S. Dist. LEXIS 241588, (D.R.I. Dec. 23, 2020) (finding fee of one-third of the Settlement Fund "eminently reasonable"); *In re Loestrin 24 Fe Antitrust Litig.*, 2020 U.S. Dist. LEXIS 125745, at *44-45 (approving fee of one-third of settlement fund as "fair, reasonable and appropriate compensation for the work done by [counsel] to create the Fund"); *Gambino v. Berry, Dunn, Mcneil & Parker LLC*, No. 2:24-cv-146 (D. Me. June 6, 2025) (same); *In re Sovos Compliance Data Sec. Incident Litig.*, No. 1:23-cv-12100 (ECF No. 51) (D. Mass. July 23, 2024) (same); *Fiorentino v. Flosports, Inc.*, Case No. 1:22-cv-11502 (D. Mass. Mar. 5, 2024) (same); *Meaden et al. v. Harborone Bank*, Case No. 1:23-cv-10467-AK (D. Mass. Nov. 14, 2023) (same); *In re Solodyn Antitrust Litig.*, No. 14-md-2503, 2018 U.S. Dist. LEXIS 244677, at *11 (D. Mass. July 18, 2018) (same); *In re Asacol Antitrust Litig.*, No. 1:15-CV-12730-DJC, 2017 U.S. Dist. LEXIS 221904, at *18 (D. Mass. Dec. 7, 2017) (same); *In re Prograf Antitrust Litig.*, No. 1:11-MD-02242-RWZ, 2015 U.S. Dist. LEXIS 199792, 2015 WL 13908415, at *13-14 (D. Mass. May 20, 2015) (same); *Klein, et al. v. Bain Capital Partners, LLC, et al.*, 07-cv-12388-WGY (D. Mass. Feb. 2, 2015) (same). "[N]early two-thirds of class action fee awards based on the percentage method were between 25% and 35% of the common fund." *In re Neurontin Mktg. &*

*Sales Practices Litig.*, 58 F. Supp. 3d 167, 172 (D. Mass. Nov. 10, 2014).

Moreover, in the Preliminary Approval Order, the Court already found Plaintiffs' intention to seek no more than one-third of the Settlement Fund in attorneys' fees as reasonable. ECF No. 37, at 3-4. Since then, the Settlement Class' reaction to the robust and informative Notice Program has been overwhelmingly positive, with a higher than typical claims rate and currently no objections to this award. As explained below, the one-third award remains reasonable.

### C. The Relevant Factors Considered by Courts in this Circuit Support the Requested Fess Award.

When determining the reasonableness of attorneys' fees as a percentage of the fund award, the First Circuit has not endorsed a specified set of factors. However, courts in this Circuit generally consider "the size of the fund and the number of persons benefitted; the skill, experience, and efficiency of the attorneys involved; the complexity and duration of the litigation; the risks of the litigation; the amount of time devoted to the case by counsel; awards in similar cases; and public policy considerations." *In re Loestrin 24 Fe Antitrust Litig.*, 2020 U.S. Dist. LEXIS 125745, at *40 ("For guidance in establishing the reasonableness of a percentage-based fee award, courts in this Circuit have looked to the factors set forth in [*Goldberger*]."); *In re Neurontin*, 58 F. Supp. 3d at 170 (considering the same factors) (quoting *In re Lupron Mktg. & Sales Practices Litig.*, No. 01-CV-10861 RGS, 2005 U.S. Dist. LEXIS 17456, at *12 (D. Mass. Aug. 17, 2005) (citing *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000))). Each of these factors support the requested one-third fee as fair and reasonable.

#### 1. *Size of the Fund and the Number of Persons Benefited*

With any class action settlement, the results obtained are the most important. Class Counsel secured a valuable and favorable $6,300,000.00 non-reversionary all cash Settlement Fund for the

benefit of Plaintiffs and the Settlement Class. This amount equates to $8.64 per Settlement Class Member, a number that exceeds the results achieved in many other recent data breach settlements. *See, e.g.*, *Gambino v. Berry, Dunn, Mcneil & Parker LLC*, No. 2:24-cv-146 (D. Me. June 6, 2025) (approving requested one-third fee award with settlement relief equating to $3.29 per class member); *In re Sovos Compliance*, 1:23-cv-12100 (ECF No. 51) (D. Mass. July 23, 2024) (approving requested one-third fee award with settlement relief equating to $7.14 per class member); *In re Loancare Holdings, Inc. Data Breach Litig.*, No. 8:22-cv-01472, 2024 U.S. Dist. LEXIS 110789, at *11-12 (M.D. Fla. June 24, 2024) (approving requested one-third fee award with settlement relief equating to $2.50 per class member); *In re Forefront Data Breach Litig.*, No. 1:21-cv-00887, 2023 U.S. Dist. LEXIS 175848, at *29 (E.D. Wis. Mar. 22, 2023) (approving requested one-third fee award with settlement relief equating to $1.55 per class member). Thus, the Settlement Fund for this Settlement Class is sufficient to award a one-third fee award.

### 2. *Class Counsel's Skills, Expertise and Efficiency*

In evaluating the skill and efficiency of class counsel, courts determine whether counsel, "had a sufficient understanding of the merits of the case in order to engage in informed negotiations, particularly where plaintiffs' counsel are skilled and experienced in consumer class action litigation[.]" *Bezdek*, 79 F. Supp. 3d at 348, *aff'd*, 809 F.3d 78 (1st Cir. 2015). Indeed, Class Counsel's skill and experience in complex class action litigation weigh in favor of the requested attorneys' fee award. Class Counsel's background and the background of the supporting attorneys and staff of Kopelowitz Ostrow P.A. and Mason LLP demonstrate that Class Counsel is experienced in the highly specialized field of class action litigation—particularly data breach class action litigation—and are well-credentialed and equal to the difficult and novel tasks at hand. Joint Decl. ¶¶ 33, 39 & Exs. 1-2. Class Counsel's attorneys' fee request is commensurate with that

experience, which was leveraged here to procure the Settlement via early resolution of the Action.

In addition to the Settlement Fund amount, when looking at the quality of Class Counsel's representation, courts typically find the absence or near absence of objections from the class to the attorneys' fees request supports the reasonableness of those fees. *See Bezdek*, 79 F. Supp. 3d at 347 (observing the "overwhelmingly positive" reaction of the class, which yielded only 23 opt-outs and 3 objections); *Maley v. Del Global Techs. Corp*., 186 F. Supp. 2d 358, 374 (S.D.N.Y. 2002) ("The reaction by members of the Class is entitled to great weight by the Court."). The Settlement Class' reaction thus far strongly suggests their support for the Settlement and the proposed attorneys' fee award.

### 3. *Complexity and Duration of the Litigation*

Even though Class Counsel is confident Plaintiffs' would prevail at trial, as discussed above, they anticipated facing several challenges in prosecuting this Action, which factored into negotiating the valuable Settlement. Joint Decl. ¶ 23. Due at least in part to the cutting-edge nature of data protection technology and rapidly evolving law, data breach cases like this one are particularly complex and face substantial hurdles even just to make it past the pleading stage. *See*, *e.g.*, *Pfeiffer v. Radnet, Inc*., No. 2:20-cv-09553, 2022 U.S. Dist. LEXIS 125933, at *6-7 (C.D. Cal. Feb. 15, 2022) ("Historically, data breach cases have had great difficulty in moving past the pleadings stage and receiving class certification."); *Gaston v. Fabfitfun, Inc*., No. 2:20-cv-09534, 2021 U.S. Dist. LEXIS 250695, at *7 (C.D. Cal. Dec. 9, 2021) ("data breach class actions are among the riskiest and uncertain of all class action litigation due to the absence of direct precedent certifying data breach cases as class actions"); *In re Sonic Corp. Customer Data Sec. Breach Litig.*, No. 1:17-md- 2807, 2019 U.S. Dist. LEXIS 135573, at *14 (N.D. Ohio Aug. 12, 2019) ("Data breach litigation is complex and risky."). Thus, absent this Settlement, Settlement Class Members

may never have secured relief, financial, or otherwise, and would have otherwise endured lengthy, expensive, and arduous litigation, during which they would still be exposed to the risk of identity theft. *See* Joint Decl. ¶¶ 21-25

Absent the Settlement, the Parties would likely engage in extensive pre-trial motion practice followed by complex and technical discovery, utilizing experts, which depletes resources from both Parties, as well as this Court. *Id.* 11. The litigation's complexity is not diminished by the fact that Class Counsel was able to reach a prompt and efficient settlement. By reaching this favorable Settlement prior to dispositive motions or trial, Plaintiffs and Settlement Class Members avoid significant expense and delay, and instead ensure a fair recovery for the Settlement Class. *See Babcock v. C. Tech Collections, Inc.*, No. 1:14-CV-3124 (MDG), 2017 U.S. Dist. LEXIS 44548, at *14 (E.D.N.Y. Mar. 27, 2017) ("[T]he settlement provides certain compensation to the class members now, rather than awaiting an eventual resolution that would result in further expense without any definite benefit to class members[.]").

Accordingly, the novelty and complex nature of data breach class action cases supports the requested attorneys' fee award to reasonably compensate Class Counsel for resolving this Action efficiently while timely recovering the maximum amount available to the Settlement Class.

### 4. *Contingency and Risky Nature of Litigation*

The uncertain nature of contingency fees required Class Counsel to assume more risk than in cases where compensation is based on billable hours. The risk in prosecuting a data breach class action, judged by the novelty and complex issues discussed above, is an important consideration in determining an appropriate attorneys' fee award and is intended to recognize that cases taken on a contingent fee basis entail risk of non-payment for the attorneys who prosecute them. This factor also embodies an assumption that contingency work is entitled to greater compensation than

non-contingency work. *In re Lupron*, 2005 U.S. Dist. LEXIS 17456, at *15 ("[m]any cases recognize that the risk assumed by an attorney is perhaps the foremost factor in determining an appropriate fee award"); *see also Brulee v. Dal Global Servs., LLC*, No. CV 17-6433, 2018 U.S. Dist. LEXIS 211269, at *28 (C.D. Cal. Dec. 13, 2018) ("Attorneys are entitled to a larger fee award when their compensation is contingent in nature").

Here, Class Counsel undertook this Action on a purely contingent basis, with no assurance of recovery of costs or compensation for their time. Joint Decl. ¶ 42. As such, they assumed significant risk of nonpayment or underpayment. *Id.* Furthermore, the attorneys involved have foregone the ability to devote time to other cases and advanced their own funds to prosecute the Action, all at the substantial risk it would yield no (or very little) recovery and leave them uncompensated for their time and out-of-pocket costs. *Id.* Despite these substantial risks, Class Counsel remained steadfast and chose to represent Plaintiffs on contingency. *See Pfeiffer*, 2022 U.S. Dist. LEXIS 125933, at *7 ("Because Class Counsel took this case on a contingency basis in a risky and still-developing area of law, this factor weighs in favor of the proposed attorneys' fee award."). Because Class Counsel invested substantial time, effort, and resources into the litigation of this risky and uncertain case with no guarantee or promise of return on their investment, such risk warrants an appropriate fee. *George v. Acad. Mortg. Corp.*, 369 F. Supp. 3d 1356, 1380 (N.D. Ga. Mar. 20, 2019) ("[A] contingency fee arrangement often justifies an increase in the award of attorney's fees[.]").

**5.    *Class Counsel and Plaintiffs' Additional Counsel Devoted Extensive Time.***

Class Counsel and additional Plaintiffs' counsel devoted a extensive time prosecuting Plaintiffs' claims efficiently and effectively to ensure the best possible outcome for the Settlement Class could be achieved. Joint Decl. ¶ 28. Though the Court need not perform a lodestar analysis,

even as a lodestar crosscheck, Class Counsel offer the combined lodestar for Class Counsel and additional Plaintiffs' counsel here is $485,747.10 reflecting for the 457.2 hours of combined attorney and paralegal time invested in the Action thus far. Joint Decl. ¶ 47. This time included investigating and drafting the initial complaints in the Related Actions; drafting the motion to consolidate the Related Actions and appoint interim class counsel; drafting the consolidated complaint; drafting formal discovery and conducting informal discovery; drafting a detailed mediation statement; preparing for and attending mediation; negotiating a complex Settlement Agreement, including the Notices and Claim Form; moving for and successfully obtaining Preliminary Approval; working in concert with the Settlement Administrator; monitoring the Notice Program and Claim Process; and preparing this Motion. *Id.* ¶ 46. As it currently stands, if approved by the Court, the one-third of the Settlement Fund requested results in a multiplier of approximately 4.32. *Id.* ¶ 48 *See, e.g.*, *New England Carpenters Health Ben. Fund, et al. v. First Databank, Inc.*, 2009 U.S. Dist. LEXIS 68419 (D. Mass. Aug. 3, 2009) (approving 8.3 lodestar multiplier). Moreover, Class Counsel will spend additional time going forward preparing for, and appearing at, the Final Approval Hearing, overseeing the final weeks of the Claims Process, and handling all post-Settlement approval issues. Joint Decl. ¶ 49. Based on prior experience, Class Counsel estimate an additional 50 hours will be invested in this Action. *Id.* Factoring in that additional time further decreases the multiplier. Therefore, this Court should "defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case" and find Class Counsel's lodestar is reasonable and supports an appropriate valuation of the time spent. *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008); *see also Rodriguez v. County of L.A.*, 96 F. Supp. 3d 1012, 1024 (C.D. Cal. Dec. 26, 2014) ("Courts generally accept the reasonableness of hours supported by declarations of counsel.").

These efforts, taken with the risk of no recovery, amply support the requested award in this case, and demonstrate that the attorneys' fees requested here have been well earned.

> **6.    *Awards in Similar Cases***

The attorneys' fee award sought here is within the range of fees typically awarded in similar cases in the First Circuit and in this District in class actions involving non-reversionary all cash settlement funds. *See, e.g.*, *Ford v. Takeda Pharms. U.S.A., Inc.*, No. 1:21-cv-10090, 2023 U.S. Dist. LEXIS 93286, at *8 (D. Mass. Mar. 31, 2023) (awarding one-third); *Gambino v. Berry, Dunn, Mcneil & Parker LLC*, No. 2:24-cv-146 (D. Me. June 6, 2025) (awarding a one-third attorneys' fee in a data breach action); *In re Sovos Compliance Data Security Incident Litig.*, No. 1:23-cv-12100 (ECF No. 51) (D. Mass. July 23, 2024) (same); *Kondo, et al. v. Creative Servs., Inc.,* No. 1:22-cv-10438-DJC, ECF No. 39 (D. Mass. Sept. 7, 2023) (same).

Additional examples of courts around the country awarding one-third for attorneys' fees in data breach settlements include: *In re Fortra File Transfer Software Data Sec. Breach Litig.*, No. 24-MD-03090, 2025 WL 457896, at *11-12 (S.D. Fla. Feb. 11, 2025) (approving 33.33% of the settlement fund); *In re Planet Home Lending, LLC Data Breach*, No. 3:24-cv-127 (KAD) (D. Conn.), ECF No. 48 (same); *In re CorrectCare Data Breach Litig.*, No. 5:22-319-DCR, 2024 WL 4211480, at *4 (E.D. Ky. Sept. 14, 2024) (same); *Alliance Ophthalmology, PLLC v. ECL Group, LLC*, Nos. 1:22-CV-296, 1:22-CV-468, 2024 WL 3203226, at *14-16 (M.D.N.C. June 27, 2024); *Abrams, et al. v. The Savannah College of Art and Design Inc.*, No. 1:22-cv-04297-LMM, ECF No. 29 (N.D. Ga. Sept. 23, 2023) (same); *Phelps, et al. v. Toyotetsu N. Am.*, No. 6:22-cv-00106-CHB-HA, ECF No. 47 (E.D. Ky. Oct. 25, 2023) (same); *In re: Forefront Data Breach Litig.*, No. 1:21-cv-000887-LA, 2023 WL 6215366, at *9 (E.D. Wis. Mar. 22, 2023) (same); and *Davidson v. Healthgrades Operating Co., Inc.*, No. 1:21-cv-01250-RBJ, ECF No. 50 (D. Colo. Aug. 22, 2022)

(same).

### 7. *Public Policy Considerations*

Finally, public policy considerations support awarding Class Counsel the requested attorneys' fee award. "The public benefits when attorneys undertake a complex commercial case that implicates consumer protections and data privacy. In addition to providing compensation to injured class members, the litigation and settlement of plaintiffs' claims incentivizes retailers to take stronger data-protection measures." *In re Hudson's Bay Co. Data Sec. Incident Consumer Litig.*, No. 18-cv-8472, 2022 U.S. Dist. LEXIS 102805, at \*67 (S.D.N.Y. June 8, 2022); *see also In re Lupron*, 2005 U.S. Dist. LEXIS 17456, at \*22-23 ("[T]here is a significant societal interest in obtaining redress for . . . consumers whose harms cold not, given the cost of litigation, be pursued on an individual basis."). Here, the Settlement serves an important public policy consideration through Plaintiffs receiving confirmation that Defendants have undertaken reasonable steps to further secure their systems and environments.

While court-awarded fees must be reasonable, setting fees too low or randomly will create poor incentives to bringing large class action cases. *See In re GSE Bonds Antitrust Litig.*, No. 19-cv-1704, 2020 U.S. Dist. LEXIS 104842, at \*24 (S.D.N.Y. June 16, 2020) ("Generally, public policy is served by ensuring a fee is large enough to incentivize lawyers to bring meritorious class actions in the future."). Accordingly, compensating Class Counsel appropriately for prosecuting this action serves this important policy goal. Thus, public policy considerations favor the reasonableness of the requested fees award.

### C. Class Counsel's Costs are Reasonable and Should Be Reimbursed.

"Lawyers who recover a common fund for a class are entitled to reimbursement of litigation expenses that were reasonably and necessarily incurred in connection with the litigation."

*Ford v. Takeda Pharms. U.S.A., Inc.*, No. 1:21-cv-10090-WGY, 2023 U.S. Dist. LEXIS 93286, at *7-8 (D. Mass. Mar. 31, 2023). Here, Class Counsel incurred $33,980.06 in litigation costs that were necessary and reasonable for the representation of the Settlement Class. Joint Decl. ¶ 52. These costs include the various court filing fees, service costs, legal research, expert fees, mediator's costs, and travel costs. *See, e.g., Baptista*, 859 F. Supp. 2d at 244 (Lisi, J.) (reimbursing litigation costs for "filing fees, the cost of mediation, travel expenses, including airfare and overnight stays, out-of pocket fees for computerized legal research, printing and other minor expenses").

### D.  The Requested Service Awards Should Be Approved.

Finally, the Class Representatives respectfully request approval of $2,500.00 Service Awards for each Class Representative. These awards (also referred to as incentive awards) recognize the burdens assumed by Plaintiffs in instituting the actions, spending time communicating with Class Counsel, fulfilling litigation responsibilities, and taking on the risks inherent with publicly attaching themselves to the lawsuit. *See, e.g., In re Loestrin 24 Fe Antitrust Litig.*, 2020 U.S. Dist. LEXIS 125745, at *46-47 ("Because 'a named plaintiff is an essential ingredient of any class action, an incentive award can be appropriate to encourage or induce' participation in the lawsuit." (quoting *In re Solodyn Antitrust Litig.*, 2018 U.S. LEXIS 164688, at *2)); *In re Lupron*, 2005 U.S. Dist. LEXIS 17456, at *24-25 ("Incentive awards serve an important function in promoting class action settlements[.]"). "In granting incentive awards to named plaintiffs in class actions, courts consider not only the efforts of the plaintiffs in pursuing the claims, but also . . . rewarding representative plaintiffs for being instrumental in obtaining recoveries for persons other than themselves." *Bussie v. Allmerica Fin. Corp.*, No. 97-40204, 1999 U.S. Dist. LEXIS 7793, at *11-12 (D. Mass. May 19, 1999). These awards are in line with others

that courts have approved. *Id.* (approving $5,000 each for the four representative plaintiffs); *see also In re Intuniv Antitrust Litig.*, 2022 U.S. Dist. LEXIS 13893, at *7 (approving $5,000 services awards); *Kodash v. Citizens Bank*, 2020 U.S. Dist. LEXIS 241588, at *2 n.2 (D.R.I. Dec. 23, 2020) (approving $15,000 incentive award).

Here, Plaintiffs initiated lawsuits, agreed to serve as settlement Class Representatives, and have been actively involved in the Action. Joint Decl. ¶ 36. Plaintiffs pursued the interests of the Settlement Class by undertaking responsibilities attendant to serving as class representatives, including, without limitation, periodically conferring with Class Counsel, providing relevant documents and information, and reviewing pleadings, Settlement documents, and other filings in the Action. *Id*. The information they provided Class Counsel was critical in determining the legal claims to be asserted and the scope of damages alleged. *Id* Accordingly, given Plaintiffs' time and efforts in supporting the litigation, combined with the risks and burdens of serving as settlement Class Representatives, the application for a $2,500.00 Service Award to each settlement Class Representative should be granted.

## VIII.    CONCLUSION

Plaintiffs and Class Counsel respectfully request the Court enter a Final Approval Order (1) granting Final Approval of the Settlement; (2) affirming certification of the Settlement Class for settlement purposes, pursuant to Rule 23(a) and (b)(3); (3) confirming Plaintiffs' appointment as Class Representatives; (4) confirming the appointments of Jeff Ostrow of Kopelowitz Ostrow P.A and Danielle L. Perry of Mason LLP as Class Counsel pursuant to Rule 23(g)(1); (v) confirming the appointment of Kroll. as Settlement Administrator; (5) awarding Class Counsel $2,100,000.00 for attorneys' fees and $33,980.06 for reimbursement of costs; (6) awarding each Class Representative a $2,500.00 Service Award; (7) overruling timely objections, if any; and 8)

entering final judgment dismissing the Action with prejudice and reserving jurisdiction over Settlement implementation. Plaintiffs attach a proposed Final Approval Order as ***Exhibit D***, updating the form that is an exhibit to the Agreement.

Dated: December 15, 2025.                                Respectfully submitted,

                                                         */s/ Jeff Ostrow*
                                                         Jeff Ostrow (*pro hac vice*)
                                                         **KOPELOWITZ OSTROW P.A.**
                                                         One West Las Olas Blvd., Suite 500
                                                         Fort Lauderdale, FL 33301
                                                         Tele: (954) 525-4100
                                                         ostrow@kolawyers.com

                                                         Danielle L. Perry (*pro hac vice*)
                                                         **MASON LLP**
                                                         5335 Wisconsin Ave. NW, Suite 640
                                                         Washington, D.C. 20015
                                                         Tele: (202) 429-2290
                                                         dperry@masonllp.com

                                                         *Class Counsel for Plaintiffs and the*
                                                         *Settlement Class*

## CERTIFICATE OF SERVICE

I hereby certify that on December 15, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record via the ECF system.

                                                         */s/ Jeff Ostrow*
                                                         Jeff Ostrow